## UNITED STATES DISTRICT COURT
### for the
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

INGRID DESROSIERS, f/k/a
Ingrid Marseille,

  Plaintiff,

vs.            **Case No: 8:22-cv-588**

FRAZIER LAW GROUP, PLLC, a/k/a
FRAZIER & BOWLES, NATHAN A.
FRAZIER, SEAN C. BOYNTON,
GREGORY SABOR GROSSMAN,
KIM BRAY, SOUTH FORK OF
HILLSBOROUGH COUNTY III
HOMEOWNERS ASSOCIATION, INC.,
ERIC DAVIDSON, MERITUS CORP.,
a/k/a Meritus Corp., Meritus Associations,
and Meritus Communities, COMMUNITY
ASSOCIATION MANAGEMENT
SERVICES, LLC, d/b/a Meritus
Associations, and a/k/a Meritus Corp.
and Meritus Communities, DAVID J. TONG,
and SAXON GILMORE & CARRAWAY,
P.A.,

  Defendants.

_____/

| |
|---|
| INJUNCTIVE RELIEF REQUESTED |

| |
|---|
| DECLARATORY RELIEF REQUESTED |

| |
|---|
| DEMAND FOR JURY TRIAL |

---

### PLAINTIFF INGRID DESROSIERS' COMPLAINT AND DEMAND FOR JURY TRIAL, PERMANENT INJUNCTIVE RELIEF REQUESTED, DECLARATORY RELIEF REQUESTED

---

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for

Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA") and Florida Consumer Collections Practices Act ("FCCPA"), § 559.55, Fla. Stat., et seq.

2.     Among the purposes of the FDCPA are to eliminate abusive debt collection practices by debt collectors, and to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. *See* 15 U.S.C. § 1692(a).

3.     The FDCPA primarily regulates the activities of persons who are in a business, the principal purpose of which is the collection of consumer debts, and persons who regularly collect or attempt to collect, directly or indirectly, consumer debts owed or due or asserted to be owed or due another.  However, certain provisions of the FDCPA regulate the activities of other entities, including, but not limited, to section 808(6) of the act, which also applies to any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of non-consumer-debt related security interests, even if such person does not regularly collect consumer debt.

## II.  JURISDICTION

4.  This action arises under the FDCPA, 15 U.S.C. § 1692k(d), as hereinafter more fully appears.  This court has jurisdiction over Plaintiffs' state law claims as per 28

U.S.C. § 1367. Venue is this District is proper because the pertinent events took place here. Declaratory relief is requested pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.  PARTIES

5.    PLAINTIFF, INGRID DESROSIERS, f/k/a Ingrid Marseille, has resided at all material times in Hillsborough County, Florida.

6.    DEFENDANT FRAZIER LAW GROUP, PLLC, a/k/a FRAZIER & BOWLES, P.A. ("Frazier & Bowles") is a Florida professional limited liability corporation engaged in the business of collecting debts in this state with its principal place of business located in Tampa, Florida.  Frazier & Bowles uses instrumentalities of interstate commerce and the mails in their business, the principal purpose of which is the collection of debts.

7.    Frazier & Bowles regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

8.    Among the debts that Frazier & Bowles collects are those owed, or at least alleged to be owed, to owners' associations.  Indeed, as per the home page of Frazier & Bowles' website, one of the three primary practice areas of Frazier & Bowles is "Assessment Collection."  Clicking a button in the box on the home page dedicated to Assessment Collection brings one to another page on Frazier & Bowles' website with the heading "Assessment Collection" and subheading, "Collection of Delinquent Accounts."

9.     DEFENDANT SOUTH FORK OF HILLSBOROUGH COUNTY III HOMEOWNERS ASSOCIATION, INC. ("SFH III") is a Florida non-profit corporation and homeowners association with its principal place of business located in Tampa, Florida.

10.     SFH III is the homeowners' association ("HOA") for the South Fork III community in Riverview, Hillsborough County, Florida.

11.     DEFENDANTS NATHAN A. FRAZIER ("Frazier"), SEAN C. BOYNTON ("Boynton"), GREGORY SABOR GROSSMAN ("Grossman"), and KIM BRAY ("Bray") are natural persons and, upon information and belief, residents of the State of Florida who at all material times have been employed by FRAZIER & BOWLES.

12.     Frazier is Manager and Managing Partner of Frazier & Bowles.

13.     According to the website of Frazier & Bowles, Grossman is "Head of" its "Collections Department" and handles collections.

14.     Frazier, Boynton, Grossman, and Bray use instrumentalities of interstate commerce and the mails in their business and that of Frazier & Bowles, and regularly collect or attempt to collect, directly or indirectly, consumer debts owed or due or asserted to be owed or due another.

15.     Defendant COMMUNITY ASSOCIATION MANAGEMENT SERVICES, LLC, d/b/a Meritus Associations ("Meritus"), is a Delaware corporation registered to do business in Florida as a foreign corporation, with its principal place of

business in Hillsborough County, Florida, and which, upon information and belief, was at all material times, the community association manager of SFH III.

16.     As evidenced by the website www.meritusassociations.com, Meritus and its principal, Brian K. Lamb ("Lamb"), have and continue to use multiple names over the years. While Community Association Management Services, LLC ("CAMS") owns the fictitious name "Meritus Associations," CAMS refers to itself on the website not just as "Meritus Associations" but also as "Meritus Corp" and "Meritus Communities." While there is a Meritus Corporation registered with the Florida Department of State, it appears to be unrelated, but there is a "Meritus, Corp." registered with Mr. Lamb as principal. Therefore, Plaintiff has named MERITUS, CORP. ("Meritus") as a defendant in this action, as well, to ensure that the proper defendant(s) is(are) before the court, and CAMS and Meritus are collectively referred to as "Meritus Associations" herein.

17.     Defendant ERIC DAVIDSON ("Davidson") is, as per his LinkedIn page, Chief Operating Officer of "Meritus Corp" and actually employed by Meritus Associations.

18.     Defendant DAVID J. TONG ("Tong") is an individual engaged in the business of collecting debts in this state with his principal place of business located in Tampa, Florida. Tong uses instrumentalities of interstate commerce and the mails in his business, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Indeed, as per webpage of his law

firm, Defendant SAXON GILMORE &  CARRAWAY, P.A. ("Saxon Gilmore"),
Tong "presently concentrates his practice in the areas of real estate litigation … and
bankruptcy/creditors' rights," "routinely represents lenders," "has handled or overseen
thousands of foreclosure cases throughout Florida," and "[h]is appellate practice has
included defending foreclosure judgments obtained by lenders and includes appeals
concerning … evidentiary issues arising out of contested foreclosure trials."  Indeed, in
an Affidavit as to Reasonable Attorney's Fees ("fee affidavit") executed by Tong in the
related state court case, Tong professed as among his qualifications that he has litigated
foreclosures actions involving residential real estate, a class of cases which almost
universally constitute debt collection.

19.     Defendant Saxon Gilmore is a Florida professional association engaged
in the business of collecting debts in this state with his principal place of business
located in Tampa, Florida.   Saxon Gilmore uses instrumentalities of interstate
commerce and the mails in his business, and regularly collects or attempts to collect,
directly or indirectly, debts owed or due or asserted to be owed or due another, via the
collection activity of Tong and other collection activities.  Saxon Gilmore's website
touts that it "has extensive experience in handling foreclosure work" including
"deficiencies," "supported by a team of paraprofessionals and staff" to "ensure
maximum recovery" including "enforcing assignment of rent provisions…." Saxon
Gilmore's website specifically touts that its "attorneys also have a successful track
record and extensive experience in … consumer collections, and other related matters."

20.    Tong's actions described herein were within the course and scope of his employment by Saxon Gilmore.

## IV.  FACTUAL ALLEGATIONS

21.    In the wake of a decision from Florida's Fourth District Court of Appeal awarding an HOA over $30,000 attorneys' fees for litigation concerning less than $600 in underlying assessments, *Pash v. Mahogany Way Homeowners Ass'n, Inc.*, 310 So. 3d 430 (Fla. 4th DCA Jan. 27, 2021), § 720.3085, Fla. Stat., was amended to add a new provision, § 720.3085(3)(d), Fla. Stat., which became effective July 1, 2021.  *See* § 7, ch. 2021-91, Laws of Florida.

22.    Pursuant to § 720.3085(3)(d), Fla. Stat.,

[a]n association may not require payment of attorney fees related to a past due assessment without first delivering a written notice of late assessment to the parcel owner which specifies the amount owed the association and provides the parcel owner an opportunity to pay the amount owed without the assessment of attorney fees.

23.    On August 11, 2021, a letter on SFH III letterhead was sent to Plaintiff, a copy of which is attached hereto as **Exhibit A**, which stated Plaintiff had a past due HOA Account Balance of $36.16 as of July 31, 2021.

24.    Pursuant to the governing documents of SFH III, an assessment is not considered past due until 30 days after it is due.  The previous "quarterly assessment" of $36.78 was due on July 1, 2021, and thus could not become past due until after July

31, 2021.

25.    Frazier & Bowles' website contains a section entitled, "Courtesy Notices."  In that section, Frazier & Bowles, states,

> As statutes continue to change, our office will take on the legal burden so your management companies do not have to. We'll handle the collections process from start to finish, beginning with sending your delinquent homeowners their first notice of overdue assessments. This ensures that the notices sent are in compliance with the statutes and that homeowners who do not pay proceed in our collections process.

26.    Considering the language on Frazier & Bowles' website in the previous paragraph, as well as the unusually-worded language at the bottom of the August 11 letter, including but not limited to the language in which it purports to be a "courtesy notice," upon information and belief, the August 11 letter on SFH III letterhead was actually prepared and sent by Frazier & Bowles.

27.    Plaintiff's HOA account balance related to an obligation or alleged obligation of a consumer to pay money arising out of transactions in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes for Plaintiff's primary residence, which was purchased and used as her residence.   The transactions out of which Plaintiff's obligations or alleged obligations arose were the transaction in which she purchased the home, and the corresponding contractual relationship under which Plaintiff became obligated to SFH III, which in turn is obligated to provide to maintain common areas of and facilities in the community surrounding Plaintiff's home, enforce rules for the

properties in the community so as to maintain the value of Plaintiff's home and others in the community, and otherwise provide household/shelter-related services to Plaintiff.

28.    The August 11 letter further stated that if Plaintiff did not pay the $36.16 in full within 30 days of the date of the letter, that her account would be released into a "legal collection process, including, but not limited to, placing a lien against the property.  The homeowner will incur all legal fees assessed by the attorney pertaining to the legal collection process as well as interest … and a $25.00 processing fee."

29.    Prior to the August 11, 2021, letter on SFH III letterhead, Plaintiff had not been provided a written notice in compliance with § 720.3085(3)(d), Fla. Stat. with respect to the assessment due July 1, 2021.

30.    Just seven days after the date of the August 11, 2021, letter, on August 18, 2021, Plaintiff paid SFH III $40.00, including an extra $3.84 for good measure in order to avoid being dragged into a legal quagmire over de minimis amounts such as occurred to the homeowner in the *Pash* case.  Thus, as of August 18, 2021, Plaintiff not only did not owe any money to SFH III, but she actually had a credit balance, as reflected by SFH III's account ledger on Meritus Associates letterhead, a true and correct copy of which is attached hereto as **Exhibit B**.[1]

31.    In the meantime, despite the fact that she owed SFH III nothing, Frazier

---

[1]  **Exhibit B** was provided to Plaintiff's former attorney by Bray on behalf of Frazier & Bowles via electronic mail on October 25, 2021.

& Bowles, through Frazier and Grossman, in knowing and willful disregard of the new Florida law, unlawfully filed suit against Plaintiff anyway, attempting to foreclose Plaintiff's home and threatening to sell it, and claiming thousands of dollars in attorneys' fees that SFH III was no longer entitled to pursue. *See* **Composite Exhibit C**.

32.    According to the website of Frazier & Bowles, before founding Frazier & Bowles, Frazier first worked for a "smaller boutique firm in Tampa Bay that allowed him time to test his concept of modernizing the law practice as technology evolves." The website also states that Frazier & Bowles, has "reliable technology and specialized systems built over the years, continue to strengthen the day-to-day operations of the communities we work with."

33.    Also according to its website, Frazier & Bowles "defers all fees for the association" so the association does not have to give Frazier & Bowles a penny to go after overdue assessments from homeowners, representing that "[a]ny cost that goes into our collections process is paid by the homeowner."

34.    In fact, the amounts claimed by Frazier & Bowles for attorneys' fees never were, and never would be, expended by the SFH III, but represented arbitrary and unreasonably high fees claimed by Frazier & Bowles (and the above-named defendants acting on its behalf) for basically entering data on forms required by § 720.3085, Fla. Stat., although as further alleged herein, Frazier & Bowles, including Boynton and

Grossman, did not even perform that data entry/ministerial task in compliance with Florida law, rendering their communications deceptive and unconscionable under the FDCPA as set forth below.

35.    As evidenced by **Exhibit B** and as will be described further herein, Plaintiff has tried in good-faith to pay her assessments to SFH III, despite communications which have understandably left her confused.  For instance, as per **Exhibit B**, on May 30, 2018, Plaintiff overpaid her account, the balance of which as per the ledger has never exceeded $350.01 including late charges and interest, by $200.44, and Plaintiff had a credit balance due to overpayments for a few months during 2019, and a zero balance through most of June of 2020.  According to that same ledger, Plaintiff's balance never exceeded $177.10 since that time, and she had a credit balance from May 24 until July 1, 2021.

36.    As per **Exhibit B**, the "quarterly" assessments at SFH III for 2021 were $36.78, due on the first day of each quarter but not late until the end of the first month of each quarter.  Because of late charges and interest, Plaintiff in good faith paid more than those assessments.  On January 6, 2021, instead of only paying the $36.78, Plaintiff paid SFH III $80.00, and on April 7, 2021, Plaintiff paid SFH III $62.50, but still had a balance owed to SFH III of $71.38.

37.    On or about May 11, 2021, Frazier & Bowles mailed Plaintiff a communication bearing Boynton's signature block in an attempt to collect not just the $71.38 but demanding a total of $388.48 to include what Frazier & Bowles represented

to be "Additional Attorney Costs" and "Additional Attorney's Fees." *See* **Composite Exhibit C**. The communication was entitled "NOTICE OF INTENT TO RECORD A CLAIM OF LIEN," a document which pursuant to § 720.3085(4)(a), Fla. Stat., must be in substantially the form set forth in that subsection, hardly a complicated legal task.

38.    The May 11, 2021, communication was the initial communication from Frazier & Bowles to Plaintiff concerning the April 1, 2021, assessment owed by Plaintiff to SFH III.

39.    The May 11, 2021, communication was the initial communication from Frazier & Bowles to Plaintiff concerning the April 1, 2021 assessment, in which Frazier & Bowles attempted to collect alleged attorney's fees and attorneys' costs items set forth therein.

40.    The May 11, 2021, communication was the initial communication from Frazier & Bowles to Plaintiff concerning the debt in which Frazier & Bowles identified itself as the sender.

41.    The May 11, 2021, communication contains surplusage not found in § 720.3085(4)(a), Fla. Stat. and is otherwise not substantially in the prescribed form, rendering it legal insufficient, deceptive, and otherwise violative of the FDCPA, and causing Frazier & Bowles' subsequent collection efforts to be unlawful, as set forth in greater detail below.

42.    In its May 11 communication, Frazier & Bowles failed to accurately provide the validation notice required by 15 USC § 1692g(a)(3), instead stating, "[w]ithin thirty days after receipt of this letter, unless you dispute …, we will assume the debt is valid," a statement which could be read to mean that Frazier & Bowles could assume the debt is valid "within" 30 days instead of not until after 30 days.   By failing to provide the proper validation notice, Plaintiff was not put on notice as to how soon Frazier & Bowles could assume the alleged debt was valid, so the period in which Frazier & Bowles had the right to assume the alleged debt was valid was indefinitely tolled, and the alleged debt was ultimately disputed by Plaintiff on various occasions, including via a July 10, 2021, letter to Frazier & Bowles, and September 1 and October 19, 2021, letter responses she filed in response to the state court lawsuit.

43.    Despite Plaintiff's September 1 pro se filing truthfully set forth that she paid the full amount - and more - demanded by SFH III in its August 11 letter, leaving her owing SFH III nothing, on October 8, 2021, Frazier & Bowles, Frazier, and Grossman filed a motion for summary judgment in the state court case on behalf of SFH III against Plaintiff.  *See* **Composite Exhibit D**.  In **Composite Exhibit D**, Frazier & Bowles,  Frazier, Grossman, and SFH III falsely alleged that there was no genuine issue of material fact, that SFH III was entitled to "foreclose its claim of lien" when in fact it had neither recorded a claim of lien nor had a right to foreclosure via summary judgment or otherwise, and that Plaintiff had failed or refused to cure her breach and

remained in breach of the Declaration and Chapter 720 of the Florida Statutes.

44.    Also in **Composite Exhibit D**, Frazier & Bowles, Frazier, Grossman, and SFH III asked the court to establish "the sums due, owing and unpaid to" SFH III when there were no such sums, asked the court to issue an order for the immediate payment of the non-existent sums, an order which would be unlawful even if Plaintiff owed the full amount claimed, and improperly asked for a money judgment for damages despite the fact that there were none.

45.    On May 14, 2021, Plaintiff paid SFH III $72.00, leaving her with a credit balance.  However, by that date there were two sets of books:  one which was maintained by SFH III's management company, Meritus Associations, and the other which was maintained by the technologically-savvy Frazier & Bowles reflecting the extortionate and excessive charges it imposed on a computer-generated statutorily-prescribed form, backed by the power of a threatened lien to collect amounts of which Plaintiff was not obligated to pay even a penny.

46.    Frazier & Bowles, Frazier, and Grossman were aware of the imminent July 1, 2021, effective date of § 720.3085(3)(d), Fla. Stat., since extorting homeowners to line their own pockets via automated systems to enter data on statutorily-prescribed forms was one of the cornerstones of Frazier & Bowles' business.

47.    On the eve of the effective date of § 720.3085(3)(d), Fla. Stat., June 30, 2021, Grossman, on the letterhead of Frazier & Bowles and on behalf of SFH III, sent Plaintiff a communication entitled "DELINQUENT ASSESSMENT," falsely

informing her that a Claim of Lien had been filed against her home because she did not pay the full amount arbitrarily demanded by Frazier & Bowles in its May 11 communication.  A true and correct copy of the June 30 communication is attached hereto as part of **Composite Exhibit C**.  In fact, no claim of lien has ever been filed or recorded against Plaintiff by SFH III.

48.    Rather than write off their time expended by the self-proclaimed technologically advanced firm in connection with populating the statutorily-prescribed form dated May 11, on June 30 Fisher & Bowles more-than-doubled-down on their extortionate practices which had already been outlawed in the state effective the very next day.  Despite Plaintiff's May 14 payment in excess of the amount actually owed to SFH III, the amount demanded in the June 30 communication had grown from $388.48 to $882.98.

49.    There is a form for "DELINQUENT ASSESSMENT" prescribed by § 720.3085(5), Fla. Stat.  Notices pursuant to that subsection must be substantially in a prescribed form but Frazier & Bowles failed to substantially use the form, and added significant surplus language, rendering the June 30 communication legally insufficient, deceptive, and otherwise violative of the FDCPA, and causing Frazier & Bowles' subsequent collection efforts to be unlawful, as set forth in greater detail below.

50.    To this date, neither SFH III nor any of its agents, including Frazier & Bowles, has filed a Claim of Lien against Plaintiff's home.

51.    Despite the fact that Plaintiff timely paid all amounts owed and

demanded in SFH III's August 11 letter and more, not only have Frazier & Bowles, Frazier, Grossman, and SFH III filed suit to foreclose on her home and for a monetary judgment, but as of October 25, 2021, demanded, via an email sent by Bray, $2,753.82 even though that very email contained an account ledger on Meritus Associates letterhead showing that Plaintiff had a credit balance. *See* **Exhibit B**.

52.    While nearly all amounts claimed by Frazier & Bowles, Frazier, Grossman, and Bray in the state court lawsuit are for alleged attorneys' fees and attorneys' costs of Frazier & Bowles, in that lawsuit, Frazier & Bowles, Frazier, and Grossman have claimed that the lawsuit is in part an attempt to collect and/or foreclose unpaid assessments - despite the fact that as of the date of the filing of the lawsuit, Plaintiff had paid all assessments claimed to be due in SFH III's August 11 letter.

53.    Frazier & Bowles has never given Plaintiff written notice that it took assignment of Plaintiff's alleged debt, or portions thereof, from SFH III.

54.    Despite the fact that Plaintiff is completely current on her obligations to SFH III as per SFH III's account ledger, more recently Frazier & Bowles has demanded over $3,000 in attorneys' fees and $700 in costs despite the fact that Plaintiff has owed SFH III nothing since prior to the time that SFH III filed suit. *See* **Composite Exhibit E**.

55.    Court pleadings and papers in consumer collection cases brought by debt

collectors such as Frazier & Bowles are considered communications subject to the FDCPA.

56.    On or about November 18, 2021, Frazier & Bowles, through Frazier and Grossman, and ostensibly on behalf of SFH III but actually on behalf of Frazier & Bowles, mailed a communication to Plaintiff that it also filed in the state court case. *See id.*

57.    As part of the November 18, 2021, communication/filing, Frazier & Bowles, through Frazier and Grossman, included an affidavit of Davidson.

58.    Davidson's affidavit tracks language contained in Florida's business records exception to the hearsay rule, but contains no records, just Davidson's testimony concerning what those records purportedly say.  In such manner, Davidson's affidavit is a ruse, intended to take advantage of pro se homeowners who cannot afford to hire attorneys to defend against alleged debts which they do not actually owe, for amounts entirely or substantially comprised of attorneys' fees, and costs and expenses in a manner that caused the practice to be outlawed but in which Frazier & Bowles, Frazier, Grossman, Bray, SFH III, Davidson, and Meritus Associates chose to engage anyway.

59.    Davidson's affidavit contains no records because as of the date of the affidavit, November 17, 2021, the records of Meritus Associations would show that Plaintiff did not owe anything at all to SFH III.

60.    Davidson's affidavit intentionally disguises his affiliation with Meritus Associations and instead uses a signature block as if he were an employee of SFH III when he was not.

61.    In his affidavit, Davidson perjuriously states, under oath, that "[o]ur office has received Payments in the Amount of $0.00" from Plaintiff, when in fact the account ledgers of SFH III, prepared by Meritus Associations, show that Plaintiff had made 12 payments to SFH III since December 6, 2017, including a payment as recently as September 8, 2021, leaving her a credit balance as per SFH III's and Meritus Association's own records provided to Plaintiff.  Indeed, it is because the records of SFH III and Meritus Associations show that Plaintiff owes SFH III nothing that the decision was made by Frazier & Bowles, Frazier, and Grossman, to omit the business records for which Davidson's affidavit purports to lay the foundation for admission into evidence.  Davidson also stated, in paragraph 3 of his affidavit, that Plaintiff owed $2,146.16 through October 8, 2021.  *See id*.

62.    In the final paragraph of his affidavit, paragraph 5, Davidson perjuriously stated that "[t]he amounts due and owing pursuant to the above paragraphs are exclusive of attorney's fees and costs."  *See id.*  In fact, the total amount of assessments Plaintiff has been responsible for paying from the time she moved into the home in 2017 through the date of Davidson's affidavit is less than $1,500, so the only way the total stated by Davidson could even be possible would be if it included attorneys' fees

and costs. Davidson's claim was not a mere miscalculation; it was a bald-faced lie to conceal the fact that the entire $2,146.16 was for attorneys' fees and costs.

63.    Upon information and belief, Davidson signed the affidavit with an SFH III signature block rather than a Meritus Associations signature block, avoided mentioning his Meritus Associations affiliation, and failed to attach an account ledger, in a deceptive attempt to hide the fact that Meritus Associations is being replaced by another management company effective December 1, and to avoid inquiry regarding the practical and evidentiary complications presented by the change.

64.    Davidson also falsely represented that Plaintiff owes SFH III $2,146.16 since SFH III had assigned all of that amount to Frazier & Bowles.

65.    In the same communication, **Composite Exhibit E**, Frazier & Bowles, Frazier, and Grossman submitted an affidavit signed by Grossman in which Grossman in one place claimed that Frazier & Bowles is "said to be paid attorney's fees" based on hourly rates, and in another place claimed that Frazier & Bowles charges a flat rate of $870.00 for attorneys' fees "for routine hearing attendance and attending the foreclosure sale attendance."

66.    Foreclosure sales in Hillsborough County are held online, not in person, and the Motion for Summary Judgment was set by Frazier & Bowles for only five minutes. The Notice of Hearing was electronically signed by Grossman, or someone on his behalf, and includes Frazier in the signature block.

67.    Grossman's affidavit claims that SFH III "has expended to date, or will

expend" certain listed costs.  *See id*.

68.    In fact, SFH III has expended no costs, since as per the website of Frazier & Bowles, Frazier & Bowles expends all costs and collects them from the homeowner - or homeless person after a foreclosure sale if Frazier & Bowles achieves maximum "success" in its extortionate efforts.

69.    Grossman's affidavit claims $37.50 - an amount in excess of SFH III's "quarterly" assessment, for "Clerk Filing Fees and Release fees for Claim of Lien", *see id.*, even though no claim of lien has ever been filed or recorded against Plaintiff with the Clerk.

70.    Grossman's affidavit also claims amounts that cannot under any scenario both be charged, but rather than claim them as alternatives, he claimed both.  For instance, Grossman's affidavit also claims "Sale Fee & Publication", *see id*., even though even if a Claim of Lien had been filed and/or recorded, either there would be a release of lien or a sale but not both.

71.    Grossman's affidavit also asserts claims for excessive amounts and amounts that are not taxable.  For instance, Grossman's affidavit claims $29.15 for "Release of Lis Pendens", *see id.*, when in fact that Hillsborough County Clerk of Court only charges $10.00 to record a one-page "Release of Lis Pendens" and the Notice of Lis Pendens recorded by Frazier & Bowles, Frazier, and Grossman against Plaintiff is only one-page in length.  Grossman's affidavit also claims $5.50 for "Provest Filing

Fee", *see id.*, which upon information and belief is a fee charged by Provest to Frazier & Bowles for the convenience of filing the return of service on Plaintiff. That is a service traditionally provided for free by process servers and something Frazier & Bowles could easily have done for free via the Florida Courts E-Filing System, and in any event a non-taxable cost.

72. In that same communication in connection with the subject collection of the alleged debt of Plaintiff, **Composite Exhibit E**, Frazier & Bowles, Frazier, and Grossman also included the fee affidavit of Tong.

73. In his fee affidavit, Tong falsely, deceptively, and misleading represented that he had reviewed "the particular facts of this case," implying that he had reviewed all material facts of the case.

74. Had Tong actually reviewed the facts of the case even minimally, Tong would have questioned whether Plaintiff had been given the opportunity to cure required by 720.3085(3)(d), Fla. Stat., and could not, after having reviewed "the particular facts of this case," properly have arrived at the conclusion that any attorneys' fees should be awarded against Plaintiff in the state court action at all.

75. Also on November 18, Frazier & Bowles communicated with Plaintiff's mortgage servicer, U.S. Bank Home Mortgage ("U.S. Bank").

76. In its communication with U.S. Bank, Frazier & Bowles falsely represented that the alleged debt it was collecting from Plaintiff was for taxes.

77.     As a result of the representations of Frazier & Bowles, on or about November 19, 2021, U.S. Bank paid Frazier & Bowles $3,028.82, and increased Plaintiff's mortgage balance by the same amount.

78.     Plaintiff's mortgage does not require her to discharge a lien that is contested, and Plaintiff has actively contested the state court lawsuit and claimed lien since shortly after being served with the Summons and Complaint until this day.

79.     As a result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered economic harm in the form of an increased mortgage balance, which will accrue interest over the course of her mortgage loan, and Plaintiff has suffered bodily injury and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and expense of medical care and treatment.  The losses are continuing, and Plaintiff will suffer losses in the future.

## V.  FIRST CLAIM FOR RELIEF – FDCPA

80.     PLAINTIFF repeats, realleges, and incorporates by reference paragraphs 5 through 79, above.

81.     Frazier & Bowles, Frazier, Grossman, Boynton, Bray, Tong, and Saxon Gilmore violated the FDCPA.  Their violations include, but are not limited to, the following:

   a) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by falsely representing the character,

amount, and legal status of the debt alleged to be owed by Plaintiff, by filing suit when Plaintiff had paid all amounts owed to SFH III in full;

b)  Frazier & Bowles, Frazier, and Boynton violated 15 U.S.C. § 1692e, including §§ 1692e(10), by requiring, in their May 11 and June 30, 2021, communications, that "[a]ll payments must be made via check or money order, payable to the Association listed above, and mailed to" Frazier & Bowles (emphasis supplied).  In fact, payments made to Meritus Associations or SFH III, and other methods of payment would be accepted, and subsequent electronic payments by Plaintiff to Meritus Associations were indeed accepted;

c)  Frazier & Bowles, Frazier, and Boynton violated 15 U.S.C. § 1692e, including §§ 1692e(10), by, in their May 11 communication, stating that interest accrues, leading the least sophisticated consumer to believe that interest accrues at 18% on the alleged $388.48 "TOTAL DUE" rather than, as limited by law, only on the much smaller amount of assessments allegedly owed;

d)  including 1692e(10) by failing to accurately provide the validation notice required by 15 U.S.C. § 1692g(a)(3), by stating, "[w]ithin thirty days after receipt of this letter, unless you dispute …, we will assume the debt is valid."  The notice required by law must give a consumer 30 days to dispute the alleged debt; as written, Frazier & Bowles twisted

the meaning so as to read that it reserved itself the right to assume the debt is valid "within 30 days," and the inaccurate language correspondingly rendered the communication deceptive and misleading;

e) Frazier & Bowles, Frazier, Grossman, and Boynton violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), and 15 U.S.C. § 1692f, including § 1692f(1), by alleging the right in the May 11 communication to payment of excessive and unreasonable attorneys' fees for data entry into a statutorily-prescribed form, such amounts not being expressly authorized by the agreement creating the debt or permitted by law;

f) Frazier & Bowles, Frazier, Grossman, and Boynton violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), in the May 11 communication by demanding amounts due despite failure to use forms substantially in the form prescribed by law, a failure which was consciously designed to maximize Frazier & Bowles' revenue;

g) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by continuing the collection process after their May 11 failure to use a statutorily-compliant form;

h) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), in the June 30 communication by

Page 24 of 34

demanding amounts due despite again failing to use forms substantially in the form prescribed by law, a failure which was consciously designed to maximize Frazier & Bowles' revenue;

i)   Frazier & Bowles, Frazier, and Grossman, and Bray violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), and 15 U.S.C. § 1692f, including § 1692f(1), by claiming additionally excessive amounts after Frazier & Bowles filed suit, such amounts not being expressly authorized by the agreement creating the debt as well as prohibited by law;

j)   Frazier & Bowles, Frazier, and Grossman, and Bray violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10) by alleging that they had filed a Claim of Lien against Plaintiff's home when they had not, and by attempting to foreclose on a claim of lien which did not exist;

k)   Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by filing suit only in the name of SFH III when even if Plaintiff had still owed SFH III anything as of the date suit was filed, SFH III had already assigned to Frazier & Bowles substantially all amounts claimed in the lawsuit, and by filing suit after taking assignment of substantially all amounts claimed in the lawsuit without having provided Plaintiff written notice of same as

required by Florida law;

l) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by claiming cost items in the state court lawsuit that cannot both be taxed or charged since, as described above, even if the state court case had any legitimacy, some of the cost items could only be incurred under alternative future scenarios;

m) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10) in its state court Motion for Summary Judgment, including, but not limited to, by falsely representing that there was no genuine issue of material fact, that SFH III was entitled to "foreclose its claim of lien," and that Plaintiff had failed or refused to cure her breach and remained in breach of the Declaration and Chapter 720 of the Florida Statutes, by asking the court to establish "the sums due, owing and unpaid to" SFH III when there were no such sums, by asking the court to issue an order for the immediate payment of the non-existent sums (an order which would be unlawful even if Plaintiff owed the full amount claimed), and by asking the court for a money judgment for damages despite the fact that there were no damages.

n) Frazier & Bowles, Frazier, Grossman, Boynton, and Bray violated 15 U.S.C. § 1692e, including §§ 1692e(2)(B) and e(10), by falsely

representing services rendered and compensation which may be lawfully received by Frazier & Bowles, Frazier, Grossman, and Boynton, by claiming excessive amounts of attorneys' fees for data entry, and for continuing to assert after June 30, 2021, that Frazier & Bowles was entitled to compensation despite the fact a lawsuit claiming such entitlement to compensation was made unlawful effective July 1, 2021, given that Plaintiff, at a minimum, paid the full amount of assessments prior to the filing of the state court lawsuit;

o) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A), (2)(B) and e(10), in its June 30 communication by implying that SFH III had "incurred" attorneys' fees when, due to its arrangement with Frazier & Bowles, it had not, and thusly misapplied Plaintiff's May 14 payment;

p) Frazier & Bowles, Frazier and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), due to the representation in Davidson's affidavit that SFH III "has expended to date, or will expend" certain listed costs, it has not actually expended;

q) Frazier & Bowles, Frazier, Grossman, and Boynton violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by using forms substantially at variance with the statutory requirements, and, in the case of Frazier & Bowles, Frazier, and Grossman, filing suit against

Page 27 of 34

Plaintiff without having provided Plaintiff with two statutorily-required forms;

r) Frazier & Bowles, Frazier, Grossman, Boynton, and Bray violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by falsely representing the amount of the alleged debt;

s) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by suborning the perjurious statements concerning the character, amount, and legal status of the alleged debt in Davidson's affidavit, and filing the perjurious affidavit with the state court;

t) Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), due to the perjurious statement in Davidson's affidavit that "[t]he amounts due and owing pursuant to the above paragraphs are exclusive of attorney's fees and costs;"

u) Tong and Saxon Gilmore violated 15 U.S.C. § 1692e, including § 1692e(10), due to Tong's false, deceptive, and misleading representation that he had reviewed "the particular facts of this case" when he had not done so, and by giving the opinion that Plaintiff should be subjected to an attorneys' fees award of $3,387.50 for a debt that she had paid in full prior to the filing of the lawsuit. Had Tong actually reviewed the facts of the case even minimally, he would have

questioned whether Plaintiff had been given the opportunity to cure required by § 720.3085(3)(d), Fla. Stat., and whether the alleged lien had actually been recorded, and Tong could not have properly arrived at the conclusion that any attorneys' fees should be awarded against Plaintiff in the state court action at all;

v)  Frazier & Bowles, Frazier, and Grossman violated 15 U.S.C. § 1692e, including § 1692e(10), by submitting Tong's false, deceptive, and misleading affidavit to the state court and communicating it to Plaintiff;

w) Frazier & Bowles violated 15 U.S.C. § 1692e(11) in the August 11 communication due to its failure to disclose that the communication was from a debt collector;

x) Frazier & Bowles violated 15 U.S.C. § 1692c(b) by communicating with U.S. Bank;

y) Frazier & Bowles violated 15 U.S.C. § 1692e, including §§ 1692e(2)(A) and e(10), by misrepresenting to U.S. Bank that they were collecting an obligation of Plaintiff for taxes;

z) Frazier & Bowles, Frazier, Grossman, Boynton, and Bray violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of was to harass, oppress, and abuse Plaintiff, including, but not limited to, claiming outrageous amounts of fees for data entry on a statutorily-

prescribed form, continuing to claim attorneys' fees in unreasonably high amounts, and suing Plaintiff after she had paid everything she owed SFH III;

aa) Frazier & Bowles, Frazier, and Grossman, violated 15 U.S.C. § 1692e, including 15 U.S.C. § 1692e(4), e(5) and e(10), by representing, implying, and threatening that nonpayment of the alleged debt claimed in the unlawful state court lawsuit would result in the sale of Plaintiff's home, and subsequent collection of the rent by SFH III or a receiver;

bb) Frazier & Bowles, Frazier, Grossman, Boynton, and Bray violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect and attempt to collect Plaintiff's debt, including the imposition of excessive attorneys' fees; and

cc) Frazier & Bowles, Frazier, Grossman, Boynton, and Bray violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect and attempt to collect Plaintiff's debt, including by filing and pursuing and unlawful lawsuit, replete with assertions of the right to foreclose on Plaintiff's home, to collect those attorneys' fees.

82.    As a result of the above violations of the FDCPA, Frazier & Bowles, Frazier, Grossman, Boynton, Bray, Tong, and Saxon Gilmore are liable for actual damages, statutory damages of $1,000.00, costs, interest, and attorneys' fees.

## VI.  SECOND CLAIM FOR RELIEF - FCCPA

83.    Plaintiff repeats, realleges, and incorporates by reference paragraphs 5 through 79, and 81, above.

84.     Frazier & Bowles, Frazier, Grossman, Boynton, SFH III, Davidson, and Meritus Associations violated the FCCPA.   Their violations include, but are not limited to, the following:

a) Frazier & Bowles, Frazier, Grossman, Boynton, SFH III, Davidson, and Meritus Associations violated § 559.72(9), Fla. Stat., by asserting the existence of the legal right to take the actions referenced herein when they knew that the right to take such actions did not exist, including, but not limited to, filing suit after Plaintiff had paid her alleged debt to SFH III in full, pursuing a lawsuit for attorneys' fees even though Plaintiff had timely paid the full amount of assessments owed when given the chance by SFH III in its August 11 letter, pursuit of a lawsuit despite having failed to provide Plaintiff at least 30 days written notice that Frazier & Bowles had taken assignment of substantially all amounts claimed to be owed by Plaintiff, pursuing a lawsuit in the name of SFH III when SFH III was not even the real party in interest for the amounts falsely claimed by Frazier & Bowles to be owed in the state court action, filing suit without complying with the statutory requirements after using communications substantially at

Page 31 of 34

variance with the required forms, and asserting the right to otherwise violate the FDCPA as set forth above;

b) Frazier & Bowles, Frazier, Grossman, SFH III, Davidson, and Meritus Associations violated § 559.72(9), Fla. Stat., by claiming and attempting, to enforce a debt when they knew, or with respect to Frazier & Bowles, SFH III, and Meritus Associations, had institutional knowledge, that the debt sought in the lawsuit, and amounts claimed therein, are not legitimate.

c) Frazier & Bowles, Frazier, Grossman, SFH III, Davidson, and Meritus Associations violated § 559.72(6), Fla. Stat., by disclosing, in the Motion for Summary Judgment, information concerning the existence of a debt known to be reasonably disputed by Plaintiff without disclosing that fact to the state court.

d) Frazier & Bowles violated § 559.72(5), Fla. Stat., by disclosing to U.S. Bank information affecting Plaintiff's reputation with knowledge or reason to know that U.S. Bank did not have a legitimate business need for the information, since Plaintiff's mortgage is available in public records and since Plaintiff was disputing the Claim of Lien, and since the information was false;

e) At all material times, Frazier & Bowles, Frazier, Grossman, Boynton, Davidson, Meritus Associations, Tong, and Saxon Gilmore acted as

agents for SFH III, and therefore SFH III is vicariously liable for their actions.

84. As a result of the above violations of the FCCPA, DEFENDANTS are liable for actual damages, additional statutory damages of $1,000.00, punitive damages, costs, interest, and attorney's fees.

## VII.  PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays that judgment be entered against DEFENDANTS as follows:

(a)    declaratory judgment that the practices of DEFENDANTS violate the FDCPA and FCCPA;

(b) enjoining those of Defendants' practices that violate the FCCPA, including an order enjoining Case No. 21-CC-089071 in the County Court in and for Hillsborough County, Florida, currently stayed, from ever resuming, and enjoining Defendants from otherwise collecting or attempting to collect, including through credit reporting, any amounts claimed to be due in the state court lawsuit;

(c)    actual damages of $100,000.00;

(d) $1,000.00 statutory damages, pursuant to 15 U.S.C. § 1692k;

(e)    $1,000.00 statutory damages, pursuant to § 559.77(2), Fla. Stat.;

(f)    punitive damages of $500,000.00, pursuant to § 559.77(2), Fla. Stat.;

(g) Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k and

§ 559.77(2), Fla. Stat.; and

(h) For such other and further relief as may be just and proper, including pre-

judgment interest.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all issues so triable.


STREETMAN LAW


By: /s/ Morgan W. Streetman
MORGAN W. STREETMAN
Fla. Bar No. 0732966
505 East Jackson Street, Suite 305
Tampa, Florida 33602
Telephone:  (813) 227-8689
Facsimile:   (813) 227-8680
Email:        Morgan@StreetmanLaw.com
Email:        Service@StreetmanLaw.com
*Lead Counsel for Plaintiff, Ingrid Desrosiers*